IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2015

## JASON CHARLES AUSTIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Washington County**
**No. 38990     R. Jerry Beck, Judge**

_____

**No. E2014-01855-CCA-R3-PC – Filed October 21, 2015**

_____

Petitioner, Jason Charles Austin, appeals from the denial of his petition for post-conviction relief.  Petitioner was indicted for one count of first degree murder.  Petitioner was convicted by a jury of second degree murder and sentenced by the trial court to 23 years incarceration.  Petitioner's conviction and sentence were affirmed by this court on direct appeal.  *State v. Charles Austin*, No. E2010-00796-CCA-R3-CD, 2012 WL 2445058 (Tenn. Crim. App., June 28, 2012), *perm. app. denied* (Tenn., Nov. 21, 2012).  Petitioner sought post-conviction relief, alleging that his trial counsel provided ineffective assistance.  Following an evidentiary hearing, the post-conviction court denied relief.  Having reviewed the entire record before us and the briefs of the parties, we conclude that the evidence does not preponderate against the post-conviction court's findings and conclusions.  Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Daniel J. Cantwell, Kingsport, Tennessee, for the Appellant, Jason Charles Austin.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; and Anthony Wade Clark, District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## *Facts and procedural background*

The facts underlying Petitioner's conviction were summarized by this court in its opinion in *State v. Charles Austin*, No. E2010-00796-CCA-R3-CD, 2012 WL 2445058 (Tenn. Crim. App., June 28, 2012), *perm. app. denied* (Tenn., Nov. 21, 2012). The evidence at trial showed that on June 22, 2005, Petitioner and his girlfriend were in an altercation with the victim, during which altercation, the victim pointed a gun at them. On June 28, 2005, Marc Coffey drove Petitioner and his co-defendant, Danny Green, to a hotel parking lot where Petitioner had seen the victim's car. Petitioner and Green approached the victim in the parking lot, and Petitioner asked the victim if he remembered Petitioner. Petitioner stated that he swung his fist at the victim, and when the victim twisted to dodge the punch, Petitioner saw something shiny in the victim's hand. Petitioner then drew his gun and shot the victim. Petitioner stated that he was acting in self-defense. Coffey testified that he saw Petitioner hit the victim on the side of the head with a gun. The victim attempted to run away, and Coffey heard two gunshots. The victim's girlfriend testified that she heard two gunshots from inside the hotel room. She ran outside to the victim who appeared lifeless. She testified that the victim was unarmed. Police found a gun inside a toboggan hat inside the victim's motel room. The victim died from multiple gunshot wounds.

## *Post-conviction hearing*

Petitioner testified at the evidentiary hearing that trial counsel visited him and reviewed with him the State's discovery response. Petitioner testified that he asked trial counsel to hire a private investigator, and Petitioner testified that he offered to pay for the investigator's services. Petitioner testified that he saw someone looking at him from inside one of the rooms of the hotel where the shooting occurred. He testified that a private investigator might have identified and located the eyewitness, who could have testified that Petitioner shot the victim in self-defense.

Petitioner testified that his family hired forensic pathologist, Dr. William McCormick, to testify in his defense. Dr. McCormick testified that the victim's facial injuries were sustained when he fell to the ground. According to Petitioner, Dr. McCormick testified at trial, during cross-examination by the State, that trial counsel had not provided him with photographs of the victim's injuries.

On cross-examination, Petitioner testified that counsel visited him in jail. Petitioner testified that he believed the outcome of his trial would have been different had trial counsel located and interviewed potential witnesses from the hotel because he

2

believed someone from inside the hotel saw that the victim possessed a gun during the incident. Petitioner testified that he saw something shiny in the victim's hand, but he could not "say 100%" that the victim had a gun. Petitioner acknowledged that although he was indicted for first degree murder, he was convicted of the lesser-included offense of second degree murder.

Trial counsel testified that he had been practicing law for 13 years at the time of the post-conviction hearing. Trial counsel testified that his defense strategy in Petitioner's case "was to try to get [a] manslaughter [conviction], and the way to do that would be to try to argue that he was defending himself from [the victim], and a jury might very well come to somewhat of a compromise[d] verdict." Trial counsel testified that he discussed Petitioner's case with him "numerous times." Trial counsel testified that he filed motions on Petitioner's behalf, including a motion to sever defendants. Trial counsel explained that he and counsel for Petitioner's co-defendant eventually decided "that the best defense was to put [Petitioner and his co-defendant] together in a trial, let them get on the witness stand, let each of them tell what happened, and just not try to hide anything from the jury whatsoever." Counsel testified that on the morning of trial, he objected to severance of the two co-defendants, but counsel testified, "[u]ltimately that probably didn't matter because [Petitioner's co-defendant] came in and testified at [Petitioner]'s trial that, yes, in fact, he had fired that fatal shot."

Trial counsel testified that he reviewed the State's discovery response with Petitioner. He testified that the police had taken statements from witnesses at the hotel, and the witnesses stated that "[t]hey didn't see anything." Trial counsel testified, "in hindsight it might have been a better practice for me to have got a log of everyone that stayed at that hotel that night and personally interviewed each of them. I didn't do that. There was no one that came forward and said they saw anything." Trial counsel testified that he did not hire an investigator. He testified, "I can't sit here and say that there's any witness that I know – knew of then or know of now that would have changed the outcome of this trial." Trial counsel testified that he cross-examined the victim's girlfriend about whether she moved the gun to the hotel room, and he "certainly insinuated that [theory] the best [he] could at trial."

Trial counsel testified that he hired Dr. McCormick to challenge the State's pathologist's testimony that the victim had been beaten. Dr. McCormick testified that the victim's injuries were the result of falling to the ground. Trial counsel acknowledged that Dr. McCormick did not "make the best witness." Trial counsel testified that he believed he provided Dr. McCormick with all of the photographs of the victim. Trial counsel testified that "there [was] nothing more [he] could have done to prepare Dr. McCormick."

3

*Analysis*

Petitioner contends that his trial counsel was ineffective because he failed to hire an investigator to find any eyewitness at the hotel where the shooting occurred. Petitioner asserts that the eyewitness could have testified about whether the victim had a gun at the time of the shooting. Petitioner also contends that counsel was ineffective because he failed to adequately prepare the defense expert witness, Dr. McCormick.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution, require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). On appellate review of trial counsel's performance, this court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time. *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

In a written order denying post-conviction relief, the post-conviction court made the following findings of fact and conclusions of law, as pertinent to the issues raised in this appeal:

> In this case, the killing occurred on a lawn near a walkway of a hotel/motel. The petitioner testified he saw people and/or lights in some of the rooms that <u>might</u> <u>have</u> been able to have seen the deceased victim with a firearm. [Emphasis in original]

> At trial the petitioner himself did not identify a gun but he saw ["]something shiny in the victims' [sic] hand" and as a result he "drew his gun and shot the victim." [Citation to the record omitted.]

> The police found no gun on or about the victim.

> The petitioner's theory at trial although not supported by the evidence was that the victim's girlfriend must have moved a gun from the scene to the room at the hotel/motel. A gun was found by the police in the girlfriend/victim's room.

> The police interviewed people staying at the hotel/motel (approximately 6) who all denied being witnesses to the shooting. The district attorney turned the statements over to original defense counsel in pre-trial discovery.

> Original trial counsel testified that he did not pursue the six or so witnesses staying at the hotel/motel evidently in light of the statements furnished to him.

5

The petitioner's theory at the post-conviction action was that if original trial counsel had questioned the people staying at the hotel they may have given a different story from what they gave to the police. This was only a conclusion or theory of the petitioner and he offered no evidence at the post-conviction hearing and called no witnesses except himself to put forward his theory or conclusion.

The victim's girlfriend who found the body of the victim testified at trial the victim did not have a gun on his person.

. . . .

In this case at jury trial, two expert and opposing medical examiners were called to describe injuries to the victim's face.

The state's expert, Medical Examiner Darinka Mileusnic-Polchan, M.D., testified that the victim, Ricker, had facial or head trauma that was consistent with having been pistol whipped.

The defendant's expert medical examiner, Dr. William McCormick, M.D. testified that by observing slides or photos . . . the injury to the face and head were consistent with the victim falling on his face.

In exhibit 1 at the post-conviction hearing a transcript of Dr. McCormick's trial testimony was introduced.

On cross-examination at the jury trial an enlarged photograph, Exh. 42, was introduced and McCormick said he hadn't seen that particular photo. The District Attorney at the post-conviction hearing described the enlarged photo as about three feet in size. The petitioner did not call Dr. McCormick as a witness at the post-conviction hearing and the photo was not introduced at the post-conviction hearing.

It is true that a photo or photos were shown to Dr. McCormick at the jury trial and he made a response that: "they were not available." [citation to the record omitted].

At the jury trial Dr. McCormick realized he had seen the photo or photos pre-trial and stated[,] "Yes I do have that [but] not in the enlargement." – "the same essential photograph.["]

6

The petitioner's theory of prejudice at the post-conviction hearing was that he assumed original trial counsel hadn't given the photo or photos to Dr. McCormick and he assumed this made him, the petitioner look bad at trial.

Considering that Dr. McCormick at jury trial indicated he had pre-trial received the photo, Exh. 42, this issue would be without merit. Original defense counsel could not be considered ineffective if he gave the photo or photos to Dr. McCormick pre-trial.

We conclude that the record supports the post-conviction court's findings. When a post-conviction petitioner alleges ineffective assistance of counsel for failure to investigate or present a certain witness in support of his defense, the petitioner should present that witness at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Petitioner failed to present any witnesses at the evidentiary hearing who could have provided testimony favorable to the defense. Although trial counsel testified that, in hindsight, he believed he should have reviewed the hotel guest log, Petitioner has failed to establish that counsel's alleged deficiency in that regard prejudiced him. Police took statements from witnesses who were present at the scene, and none of the witnesses stated that they saw anything. Petitioner testified that he saw something shiny in the victim's hand, but he could not "say 100%" that the victim had a gun.

Regarding Petitioner's assertion that trial counsel failed to adequately prepare defense expert Dr. McCormick, the post-conviction court found that although Dr. McCormick initially testified at trial that he had not been provided a photograph of the victim's autopsy, later in his testimony, he recognized the photograph and testified that he had been given it prior to trial. A transcript of Dr. McCormick's trial testimony was admitted as an exhibit to the post-conviction hearing. Petitioner has not established that counsel's performance was deficient for failing to prepare Dr. McCormick to testify at trial. Petitioner asserts that he was prejudiced by Dr. McCormick's apparent lack of preparation; however, trial counsel testified at the post-conviction hearing that although he believed that Dr. McCormick did not "make the best witness[,]" trial counsel provided Dr. McCormick with all of the photographs of the victim, and trial counsel testified that "there [was] nothing more [he] could have done to prepare Dr. McCormick."

Petitioner also contends that the post-conviction court deprived him of his right to due process by refusing to hear evidence at the post-conviction hearing regarding trial counsel's (1) "[f]ailure to prepare [Petitioner] before court concerning the severance of

7

his trial from his co[-]defendant's trial," and (2) "failure to investigate or talk to a material witness, the victim's mother, which later revealed at the sentencing hearing exculpatory testimony."

At the outset of the evidentiary hearing, the State sought dismissal of Petitioner's post-conviction claims regarding severance and counsel's failure to call the victim's mother as a witness, arguing that those issues had been decided on direct appeal. The post-conviction court heard argument from both parties and granted the State's motion to dismiss those post-conviction claims. The post-conviction court noted that both issues were raised on direct appeal. Relying upon the opinion in the direct appeal in this case, in which a panel of this court held that Petitioner had not shown that he was prejudiced by the trial court's severance of his trial from his co-defendant's trial and that the testimony of the victim's mother was not material, the post-conviction court concluded that Petitioner could not establish prejudice.

Regarding the trial court's severance of Petitioner's and his co-defendant's cases, a panel of this court held:

> As stated above, the trial court decided to sever the two trials based upon the indecision displayed by Appellant immediately prior to the beginning of his joint trial with his co-defendant. Appellant argues that due process rights and his right to a fair trial were violated because of the severance. He argues that the attorney's intent was to have the two defendants tried together. Both Appellant and his co-defendant Green would be shown to have been the shooter of the fatal shot. Therefore, Appellant argues that he was prejudiced. However, a review of the record shows that Co-defendant Green testified at Appellant's trial. The evidence did indeed lead to the conclusion that he had fired the fatal shot. Therefore, this evidence was presented to the jury even though the cases were severed. For this reason, Appellant has not been able to prove his argument that he was prejudiced by the severance of his trial from Co-defendant Green's trial. For this reason, we find no abuse of discretion by the trial court in ordering the severance of the trials.

*Austin*, 2012 WL 2445058 at *9.

Regarding the testimony of the victim's mother, a panel of this court held:

> The fact that the victim had a gun and brandished it during the altercation does not alter that fact that the altercation between Appellant and the victim occurred on June 22, 2005, six days before the shooting

8

on June 28, 2005. Additional testimony about the victim's possession of the gun on June 22, 2005, does not make it more likely that the victim had a gun when he was shot by Appellant. Appellant was convicted of the lesser-included offense of second-degree murder. While we agree that the evidence somewhat corroborates Appellant's version of the events on June 22, 2005, we do not find that the testimony would make him any less culpable for the shooting death of the victim on June 28, 2005. Therefore, we conclude that there is not a reasonable probability that Ms. Ricker's testimony would have resulted in a different outcome at trial. Appellant has not met the fourth prerequisite to prove that his due process rights were violated by the failure to receive this evidence.

*Id*. at *6.

First we note, as the post-conviction court noted in its order, that although the issue of counsel's alleged deficient performance in these two respects was not raised on direct appeal, the issues of severance and the materiality of the testimony of the victim's mother were raised on direct appeal, and this court's opinion specifically addressed the prejudicial effect, if any, of the two alleged errors.

The post-conviction court applied the same reasoning employed by this court in the direct appeal in concluding that Petitioner failed to show that he was prejudiced by either the trial court's severance of Petitioner's case from his co-defendant's case or by trial counsel's failure to call the victim's mother as a witness. Following our review, we conclude that the record supports the post-conviction court's finding that Petitioner failed to establish prejudice. Despite the trial court's severance of Petitioner's trial from that of his co-defendant, Petitioner's co-defendant testified at Petitioner's trial. Even if Petitioner's trial counsel failed to adequately prepare him for severance, as Petitioner contends, Petitioner cannot show that the result of his trial would have been different. Furthermore, Petitioner cannot show that the victim's statement to his mother that he pulled a gun on Petitioner because Petitioner pulled a gun on him during the incident days prior to the shooting for which Petitioner was convicted would have affected the outcome of his trial. This court concluded as much on direct appeal. We therefore conclude that Petitioner has failed to establish that he was prejudiced by counsel's alleged deficiencies. We also conclude that Petitioner was not denied due process by the post-conviction court's dismissal of these issues. Petitioner was given the opportunity to present his argument relative to these issues at the evidentiary hearing. Therefore, Petitioner was given a meaningful opportunity to be heard in a meaningful manner. *See Seals v. State*, 23 S.W.3d 272, 277-78 (Tenn. 2000).

9

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____

THOMAS T. WOODALL, PRESIDING JUDGE